Davis, J.
The relator, Jean D. McKell, was.appointed administratrix of her late husband’s, estate, and she was ordered to give bond in • the sum of $200,000. The relator immediately tendered a bond in the required amount; but the probate judge refused to accept it, solely on the ground that it was signed by personal sureties and not by a surety company, as required by the act of the general assembly, entitled “An act to amend section 3641c of' the Revised Statutes of Ohio, relating to the giving of surety bonds,” passed April 20, 1904 (97 O. L., 182). The probate judge was fully satisfied that the bond was sufficient in every other respect. The relator therefore prays • for a writ of mandamus commanding the respondent, the probate judge, to approve and accept the bond so tendered. The respondent answers that he did not accept and approve said bond because the said statute provides that any administrator’s bond in excess of $2,000.00 must be. executed and guaranteed by a surety company or companies authorized by the laws of Ohio to guarantee the fidelity of persons holding places of public or private trust, unless the person required to give; such bond shall make affidavit that he has applied to. such surety company or companies for such bond., and has been refused or rejected; that the bond, offered by relator being in excess of $2,000.00 and: not being executed and guaranteed by such- surety company or companies, but by personal sureties, and *290 no affidavit, as provided by-law, having been filed,, he was prohibited by the aforesaid statute from accepting or approving said bond.
To this answer the relator has filed a demurrer.
It is insisted on behalf of the relator in support of the demurrer that this statute is unconstitutional.
The provisions of the act are so interdependent and interwoven that the whole- act must stand or fall together. It provides that the execution of all bonds for the faithful performance of official or fiduciary' duties, or the faithful keeping, applying or accounting for funds or property, or for one or more of such purposes, with certain exceptions, is thereby required to be by a surety company or companies. We are therefore not able clearly to perceive that the general assembly intended in any event to require bonds to be executed by- a surety company or companies in any one of the classes mentioned to the-exclusion of another. This being so if the statute is void as to administrators, or other fiduciaries, it is void as to public officers, and if void as to public-officers. it is void as to fiduciaries, and the contention Rere made as to the bond of an administratrix involves as well the question as to the validity of the-bonds of public officers.
- Liberty to contract is one of the inalienable rights-of man which is guaranteed to every citizen by the bill of rights (Constitution, article 1, section 1) subject only to such restrictions as clearly appear to be for. the general welfare. The mere fact that the general assembly has enacted a law which narrows the liberty of contract as to the whole people or as to a class of citizens, is not decisive. If it were So, the constitutional guaranty might be made a dead letter by bills passed through the procurement of inter *291 ested parties or in response to the demands of extremists in times of popular excitement. It is the province of the courts to determine whether a given statute infringes the constitution, which is the supreme law, and therefore it is within the province of the courts to decide whether the common welfare demands a restriction of the right of individuals to contract freely for their own benefit or convenience.
It is the undoubted right of the general assembly to require bonds to be given “for the faithful performance qf official or fiduciary duties, or the faithful keeping, applying or accounting for funds or property, or for one or more such purposes,” and to make reasonable requirements as to execution, approval and security to effectuate fully the purposes thereof. But unless the public welfare should justify and require it, the power of the general assembly is so limited by the constitution, article 1, section 1, that it cannot deny or restrict the liberty of the officer or fiduciary to obtain or contract for a bond on terms satisfactory to himself. Before the enactment of this statute an officer was at liberty to present a bond signed by personal sureties or by a surety company or companies, as his own interest or convenience might suggest. The right of choice between the classes of sureties is now denied him. It is now made compulsory upon him to give bond signed by surety companies, and personal security is in effect abolished. It is very plain that the security companies may be greatly benefited by this legislation, but an adequate corresponding benefit or protection to the general public, such as would justify such a radical and drastic limitation upon individual rights, is not apparent. The amount of loss to the state, county, township or municipality on official *292 bonds, or to the beneficiaries under bonds of executors, administrators, guardians, trustees or other fiduciaries, comparatively speaking, is trifling. Indeed it is possible that the loss is no greater than would result when the bonds shall be signed exclusively by incorporated companies, which sometimes become insolvent as individuals do. It is true that the loss, if any default occurs, falls on the sureties, and that there have been special acts of the general assembly for the relief of sureties in cases in which it was claimed that the principal was not in fault. Some of these acts are meritorious, many of them improvident and most of them unconstitutional. It argues nothing in favor of the legislation which is assailed here that sureties sometimes seek to. escape from the consequences of their contract of surety-, ship. The fact remains that those whose interests are protected by personal bond rarely lose. We have not been advised of any necessity for, or general demand for, the abolition of personal security and the substitution therefor of corporate security, and the reasons which we have given persuade us that the public welfare does not require it.
But further, not only is the person who gives .a bond deprived of the right to obtain it of whomsoever- and however he pleases, subject only to the requirement that it really protects and secures the obligee, but the obligee is compelled to pay a security company for protection. The burden is. not put on the. officer or fiduciary to. give protection, but on the public or estate to obtain protection. The requirement of the statute is that an executor, administratoi', guardian, trustee or other fiduciary shall give a security company as bondsman, and that the estate shall pay for it, which is a taking of private. *293 property for private uses without compensation, and that a public officer shall give bond with a surety company as surety, the premium to be paid out of the public funds. The effect of the latter provision is to require the state, county, township or municipality to pay to the enrichment of security companies, each year, vastly more than it would lose by defaulting public officials; and it thus becomes evident that it would be more economical for the public to become its own insurer of the good faith of its officials, which would result perhaps in no official bond in any case. It does not seem to us, therefore, that any part of this statute was promoted by considerations of public necessity or public welfare, and thence it follows that it is an unconstitutional restriction upon the liberty to contract which is guaranteed by article 1, section 1 of the constitution of this state.
It is contended on the part of the respondent that no citizen has an inalienable right to act as a legal representative or public officer; that the general assembly has power to provide for the descent and distribution of estates and for the appointment and qualifications of executors and administrators, including the giving of bonds; that the general assembly has power to prescribe the manner of election to a public office and the qualifications therefor; and that it logically follows from these premises that the general assembly has, authority to determine the kind and sufficiency of the security to be given. The general soundness of this argument is not to be questioned; but it is pressing the conclusion too far to maintain that the legislature may go beyond the purpose of the security to be given, and may require -things to be done which do not increase the protec *294 tion of the obligee, which abridge individual rights without contributing to the general welfare, and which enrich a designated class of sureties to the exclusion of all others. Such a conclusion would lead not only to violation of article 1, section 1 of our constitution, as already shown, but of article 1, section 2, also, which declares that “government is instituted for the equal protection and benefit” of the people. This basic principle of the constitution is also violated when executors, administrators, guardians, trustees or other fiduciaries, whose bonds are fixed at an amount not in excess of two thousand dollars, are excepted from the operation of the act. No good reason for this discrimination is apparent. If personal bonds are a public evil they should be abolished altogether. If bonds signed by surety companies are the only ones fit for the security of estates, all estates should be permitted to enjoy equally both the protection and the benefit. If any discrimination were necessary it would seem to be the better way to allow all estates, large and small, to procure personal bonds or security company bonds as they might be able or might prefer, instead of compelling the larger estates to pay tribute to the surety companies while the smaller estates, presumably less desirable risks to the surety compánies, are still permitted to give either personal bonds or bonds of security companies — if the latter do not reject their applications, as the statute provides that they may do.
We do not regard any of the cases cited for the respondent as decisive of the question now before us. The issue raised here is whether the general assembly may make security by security companies exclusive and compulsory. It is not whether cor *295 porations may be authorized to secure bonds, nor whether the person giving bond may at his option give a bond signed either by personal securities or by security companies.
Our conclusion is that the statute is unconstitutional and it is accordingly ordered and adjudged that the demurrer to the answer be sustained and a

Peremptory writ of mandamus allowed.

Spear, C. J., Shatjck, Price and Crew, JJ., concur.